**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-24961-PCH**

**LIEN ACOSTA MIJARES and**
**NAYIBI PEREZ PEREZ,**

      Appellants,

vs.

**SONEET KAPILA, CHAPTER 7 TRUSTEE,**

      Appellee.

_____/

## **OPINION**

Appellants Lien Acosta Mijares ("Mijares") and Nayibi Perez Perez ("Perez", and collectively, "Appellants") appeal the United States Bankruptcy Court for the Southern District of Florida's (the "Bankruptcy Court") *Order Sustaining Trustee's Objection to Debtor's Claimed Exemptions* (the "Order"), entered on October 15, 2025, which sustained Appellee Sonneet Kapila's objections to Appellants' claims of exemption as to their homestead property, reduced the amount of Appellants' permitted exemption by $92,727, and allowed Appellants' homestead exemption in the amount of $285,373. After reviewing the evidence and applicable law, the Court concludes that the Bankruptcy Court did not clearly err in finding that there was sufficient evidence, including extrinsic evidence, to establish that Appellants transferred nonexempt assets into an exempt property with the intention of hindering, delaying, or defrauding the United States Small Business Administration ("SBA"). Therefore, the Bankruptcy Court's decision is **AFFIRMED**.

## I.      BACKGROUND

Appellants filed a voluntary petition for bankruptcy under Chapter 7 of Title 11 of the United States Code on September 25, 2024. Appellee was appointed as the Chapter 7 Trustee of Appellants' bankruptcy estate. Appellants scheduled their interest in certain real property located at 2680 SW 33 Avenue, Miami, Florida 33133 as their homestead (the "Property") and claimed it as exempt pursuant to Article X, Section 4(a)(1) of the Florida Constitution. On their schedules, Appellants listed $555,080.42 in general unsecured debts, which included $403,000 owed to the SBA in connection with a disaster relief business loan (the "Loan").

On March 31, 2025, Appellee filed an objection to Appellants' claimed homestead exemption asserting, in essence, that Appellants converted at least $100,000 in SBA Loan funds (the "Loan Proceeds"), which were nonexempt assets, to purchase and improve the Property. Appellee asserted that Appellants' use of the Loan Proceeds in this manner was inconsistent with the Loan's requirements and, thus, was done with the intent to hinder, delay, or defraud the SBA, thereby satisfying the requirements of 11 U.S.C § 522(o) for reducing the value of the claimed exemption.

### A.  The Loan

Appellants obtained the Loan on behalf of Mijares's business, Grace Fashions USA (the "Business"). The Loan was subject to three restrictions: funds could only be used for working capital for the Business, all inventory of the Business was to remain in the Property, and the inventory had to be insured. Appellants obtained the initial Loan Proceeds, which was a sum of $63,800, in May 2020. On June 10, 2021, Mijares accepted an offer from the SBA to increase the Loan amount to $198,400, and on August 10, 2021, Mijares accepted an offer to increase the Loan amount to $403,000.

Appellants purchased the Property on August 26, 2021. Prior to purchasing the Property, Appellants had been renting the Property for approximately ten years. Appellants used almost $14,000 of the Loan Proceeds towards the purchase of the Property.

Between October 2021 and January 2022, Appellants wrote checks totaling $92,727 from an account holding the Loan Proceeds to contractors for expenses related to repairing and remodeling the Property. Specifically, Appellants wrote checks to (1) Home Service Builder's Corp. for remodeling, (2) 1 Stop LLC for carpentry, (3) Asphalt & Concrete Service LLC for asphalt, and (4) Juan Velazquez for roof recovery.

### B.  Appellants' Rule 2004 Examination Testimony

On August 25, 2025, the Bankruptcy Court conducted an evidentiary hearing on Appellee's Objection. At the hearing, Mijares testified that when she and Perez purchased the Property on August 26, 2021, it was in "bad condition," and they intended to make repairs to it. Mijares admitted that she used the Loan Proceeds to make improvements to the Property and to pay bills for her personal credit cards, even though she understood that the Loan Proceeds were to be used exclusively for business purposes and that the Loan documents warned of civil and criminal consequences arising from the misapplication of the Loan Proceeds. Mijares also admitted that she had written checks drawn from the account holding the Loan Proceeds to improve the Property. Mijares also testified that neither she nor Perez sought or obtained SBA approval for the use of the Loan Proceeds for purposes other than working capital and that neither she nor Perez notified the SBA of the misapplication of the Loan Proceeds. Mijares testified that she always believed she would be able to pay back the SBA since the Loan had a 30-year repayment term, even as she and Perez were misapplying the Loan proceeds. Mijares

3

further testified that she initially made their monthly payments on the Loan until she defaulted around December 2023 or January 2024.

Mijares also testified about the nature of the Business. Mijares testified that the Business sold different types of merchandise, such as clothing, shoes, and jewelry. The Business sold these goods online via Amazon as well as in person. Mijares testified that the Business was operated completely out of the Property and that all of the inventory was stored at the Property. Additionally, Mijares admitted that she regularly intermingled her business and personal expenses and that she paid for all of her expenses, including her personal expenses, using the Business's bank account.

On October 15, 2026, the Bankruptcy Court entered its Order, which found that the following "actions and circumstances" established that Appellants had the "requisite intent to hinder, delay, or defraud the SBA": (1) Mijares's testimony that she understood the Loan was to be used for working capital rather than personal expenses, (2) Mijares's testimony that, despite this understanding, she made improvements to the Property that were not tied to her business operations, (3) the fact that Appellants converted the nonexempt assets into an exempt asset that they owned and controlled, (4) the fact that Appellants did not disclose their misapplication of the Loan Proceeds to the SBA, (5) the fact that Appellants began using the Loan Proceeds for repairing and remodeling the Property shortly after obtaining the funds, and (6) the fact that Appellants knew or should have known that they would be unable to repay the Loan given their financial condition at the time they used the Loan Proceeds to improve the Property. Accordingly, the Bankruptcy Court sustained Appellee's objections, reduced Appellants' permitted exemption by $92,727, and allowed Appellants' homestead exemption in the amount of $285,373.

## II.    DISCUSSION

On appeal, the Bankruptcy Court's findings of fact will not be set aside unless clearly erroneous. *See In re Chase & Sanborn Corp.,* 904 F.2d 588, 593 (11th Cir. 1990) (citing *In re Sublett,* 895 F.2d 1381, 1383 (11th Cir. 1990)); *see also In re Hoffman*, 22 F.4th 1341, 1344 (11th Cir. 2022) (citing *In re Brown*, 742 F.3d 1309, 1315 (11th Cir. 2014)) (noting that the district court's standard of review in a bankruptcy appeal is the same as the Eleventh Circuit's standard of review). How the Court reviews a mixed question of law and fact "depends on whether answering it entails primarily legal or factual work." *PRN Real Est. & Invs., Ltd. v. Cole*, 85 F.4th 1324, 1333 (11th Cir. 2023) (quoting *In re Stanford*, 17 F.4th 116, 121 (11th Cir. 2021)). The Court's review is *de novo* when it must "expound on the law, particularly by amplifying or elaborating on a broad legal standard." *Id.* The Court reviews for clear error when it must "marshal and weigh evidence, make credibility judgments, and otherwise address . . . multifarious, fleeting, special, narrow facts that utterly resist generalization." *Id.*

**A.  The Bankruptcy Court did not clearly err in finding there was sufficient extrinsic evidence to show fraudulent intent.**

This case concerns the application of 11 U.S.C. § 522(o), which provides that the value of an interest in real property that the debtor claims as a homestead "shall be reduced to the extent such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor . . . ."

The "badges of fraud" approach "has been routinely employed in Section 522(o) determinations." *In re Booth*, 417 B.R. 820, 823 (M.D. Fla. 2009) (citing *Addison v. Seaver (In re Addison)*, 540 F.3d 805, 811 (8th Cir. 2008)). Under this approach, because proof of actual intent to defraud may rarely be accomplished by direct proof, "courts may infer fraudulent

conduct from the circumstantial evidence and the surrounding circumstances of the transactions." *In re XYZ Options, Inc.*, 154 F.3d 1262, 1271 (11th Cir. 1998). In determining whether the circumstantial evidence is sufficient to establish fraudulent intent, courts should look for the existence of certain badges of fraud, including whether (1) the transfer was to an insider, (2) the debtor retained possession or control of the transferred property, (3) the transfer was disclosed, (4) before the transfer was made the debtor had been sued or threatened with suit, (5) the transfer was of substantially all the debtor's assets, (6) the debtor absconded, (7) the debtor removed or concealed assets, (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred, (9) the debtor was insolvent or became insolvent shortly after the transfer was made, (10) the transfer occurred shortly before or shortly after a substantial debt was incurred, and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. *Id.* at 1271–72 (citations omitted).

In addition to the badges of fraud themselves, courts also require that there be extrinsic evidence of fraud to support a finding of fraudulent intent. *In re Roberts*, 527 B.R. 461, 474 (Bankr. N.D. Fla. 2015) (citations omitted). In other words, for a court to find fraudulent intent, there must "appear in evidence some facts or circumstances which are extrinsic to the mere facts of conversion of nonexempt assets into exempt and which are indicative of such fraudulent purpose." *Id.* at 476 (quoting *In re Lafferty*, 469 B.R. 235, 247 (Bankr. D.S.C. 2012)). Extrinsic evidence of fraud can come in many forms. "Extrinsic evidence of fraud can include conversion of a large amount of property, conduct intentionally designed to materially mislead or deceive creditors about the debtor's position or use of credit to buy exempt property, or conveyance of property for no or inadequate consideration." *Id.* (quotation marks omitted).

Appellants contend that the Bankruptcy Court relied exclusively on the badges of fraud, not on any extrinsic evidence, in finding that Appellants acted with an intent to defraud the SBA because the "actions and circumstances" that the Bankruptcy Court found established fraudulent intent all corresponded with a badge of fraud. The Court disagrees.

The Bankruptcy Court had a robust, sufficient evidentiary record before it, and did not clearly err in relying upon the same in finding fraudulent intent. The evidentiary record before the Bankruptcy Court contained sufficient extrinsic evidence beyond "the mere facts of conversion of non-exempt assets into exempt" to support a finding of fraudulent intent. *Roberts*, 527 B.R. at 476. Such extrinsic evidence included (1) Mijares's testimony that she understood that the Loan was to be used only for working capital, not personal expenses, (2) the provisions of the Loan documents regarding potential criminal penalties for misuse of the Loan Proceeds as well as Mijares's testimony that she was aware of these provisions, and (3) the fact that Appellants used the Loan Proceeds to make improvements and renovations to the Property that were not tied to the Business's operations. *Cf. In re Addison*, 540 F.3d 805 (8th Cir. 2008) (finding no extrinsic evidence of fraud even where, after becoming insolvent but prior to filing for bankruptcy, debtor converted nonexempt assets to exempt in part because debtor did not borrow money to place into exempt assets and debtor had preexisting homestead). Two of these factors, Mijares's testimony that she understood that the Loan was to be used only for working capital and the fact that Appellants used the Loan Proceeds to make improvements to the Property that were not tied to the Business's operations, were specifically mentioned in the Bankruptcy Court's Order as "actions and circumstances" supporting its decision.

For these reasons, the Court finds that the Bankruptcy Court did not clearly err in finding there was sufficient extrinsic evidence in the record supporting fraudulent intent.

**B. The Bankruptcy Court did not clearly err in finding that Appellee had proven intent to defraud by a preponderance of the evidence.**

Appellants next contend that even if there was extrinsic evidence of fraudulent intent in the record, the Bankruptcy Court erred in finding that Appellee met his burden of establishing actual intent to defraud. As the objecting party, Appellee had the burden of proving by a preponderance of the evidence that Appellants intended to defraud the SBA at the time they transferred nonexempt assets into an exempt asset. *See Roberts*, 527 B.R. at 473 (citations omitted); *see also In re Cook*, 535 B.R. 877, 889 (Bankr. N.D. Fla. 2013) ("The key date for determining a debtor's intent 'pursuant to the plain language of 11 U.S.C. § 522(o)' is the date the debtor acquired the exempt property.") (quoting *In re Booth*, 417 B.R. at 823).

The Parties appear to disagree as to what time period should have been the focus of the Bankruptcy Court's inquiry. Appellants appear to argue that the Bankruptcy Court should have assessed Appellants' intent at the time that Appellants received the Loan Proceeds from the SBA or when Appellants acquired title to the Property. Appellee appears to contend the Bankruptcy Court should have assessed Appellants' intent at the time that Appellants acquired title to the Property. It is evident to the Court that the proper focus of the Bankruptcy Court's inquiry should have been the time that Appellants used nonexempt assets to purchase and improve the Property, for that is when Appellants clearly transferred the nonexempt Loan Proceeds into the exempt Property. Therefore, the proper inquiry was whether Appellants intended to defraud the SBA when they used the Loan Proceeds to both acquire and improve the Property.

Based on the record, the Court finds that the Bankruptcy Court undertook the proper inquiry. In its Order, the Bankruptcy Court identified the "actions and circumstances" that established that Appellants had the requisite intent to defraud the SBA. *See supra* at 4. Each of the "actions and circumstances" cited by the Bankruptcy Court are directly related to Appellants'

intent at the time they used the nonexempt Loan Proceeds to purchase and improve the exempt Property, including the fact that Appellants did not use to Loan Proceeds for working capital, the fact that Appellants retained control of the Property even after transferring nonexempt assets into it, the fact that Appellants knew or should have known that they were unable to repay the Loan at the time that they used the Loan Proceeds to purchase and improve the Property, and the fact that Appellants converted the Loan Proceeds to the exempt Property shortly after receiving the Loan Proceeds.

Having found that the Bankruptcy Court undertook the proper inquiry below, the next question is whether the Bankruptcy Court clearly erred in finding that there was sufficient evidence to establish by a preponderance of the evidence that Appellants intended to defraud the SBA when they transferred their nonexempt assets into the exempt Property. The Court finds that the Bankruptcy Court did not clearly err in making this finding. The "actions and circumstances" set forth in the Bankruptcy Court's Order and the extrinsic evidence discussed in the preceding section, *see supra* II.A, provided sufficient support for the Bankruptcy Court to properly find that Appellee met his burden of proving by a preponderance of the evidence that Appellants intended to defraud the SBA.

**C. The Bankruptcy Court did not clearly err in applying the badges of fraud.**

Appellant's last contention is that the Bankruptcy Court misapplied all but two of the "badges of fraud" to the facts of this case, and that, therefore, there are not enough badges of fraud applicable to this case to establish fraudulent intent. Specifically, Appellants argue that the Bankruptcy Court erred in finding that the following badges of fraud applied to this case: (1) transfer to insiders, (2) failure to disclose, and (3) insolvency. Appellants concede that the Bankruptcy Court correctly found two badges of fraud applied in this case: (1) retention of the

transferred property and (2) transfer occurring shortly before or after a substantial debt is incurred.

Appellants first contend that the Bankruptcy Court erred in finding that the "transfer to insider" badge of fraud applied to this case because the nonexempt assets were not transferred to an insider as "insider" is defined in Fla. Stat. § 726.102(8). Appellant's reliance on Fla. Stat. § 726.102(8) is misplaced, as neither the case law nor the text of 11 U.S.C § 522(o) indicate that the definition of "insider" from Fla. Stat. § 726.102(8) applies under 11 U.S.C § 522(o). Appellants transferred nonexempt assets into an exempt property that Appellants owned. Such a transfer is undoubtedly a transfer to an insider. Therefore, the Court finds that the Bankruptcy Court did not clearly err in finding that the "transfer to insider" badge of fraud applied in this case.

Appellants next contend that the Bankruptcy Court erred in finding that the "nondisclosure" badge of fraud applied because it would be absurd to require Appellants to report their use of the loaned funds to their creditor in order to claim a homestead exception. Appellants argument does not persuade. At no point while applying for the Loan did Appellants disclose to the SBA that they intended to use the Loan for anything other than working capital, even though Appellants were aware that the Loan's use was limited to such purposes. Therefore, the Court finds that the Bankruptcy Court did not clearly err in finding that the "nondisclosure" badge of fraud applied in this case.

Lastly, Appellants contend that the Bankruptcy Court erred in finding that Appellants knew or should have known that they would not have been able to pay back the Loan because there was no evidence that Appellants were facing financial difficulties or were insolvent when they purchased and improved the Property and because Appellants always intended to pay back

the Loan and indeed were paying back the Loan until December 2023 or January 2024. The Court construes this as an argument that the Bankruptcy Court erred in applying the "insolvency" badge of fraud to this case. The Court agrees with Appellants that the Bankruptcy Court clearly erred in finding that the "insolvency" badge of fraud applied in this case because the evidence in the record did not support a finding that Appellants were insolvent when they purchased and improved the Property or that Appellants became insolvent soon thereafter. Indeed, Appellants did not default on their Loan repayment obligations until over 2 years after they purchased the Property. However, this finding of error is insufficient grounds to reverse the Bankruptcy Court's decision.

As a whole, the Bankruptcy Court properly found that a sufficient number of badges of fraud were present in this case to support a finding of fraudulent intent. Courts have routinely found that the presence of one badge of fraud is insufficient to establish fraudulent intent, but "several of them together may afford a basis to infer fraud." *In re PSI Indus., Inc.*, 306 B.R. 377, 387 (Bankr. S.D. Fla. 2003) (citing *In re World Vision Ent., Inc.*, 275 B.R. 641 (Bankr. M.D. Fla. 2002)). Furthermore, "[t]he badges of fraud are not exclusive, and courts may consider other evidence to determine a debtor's intent." *In re ATIF, Inc.*, 160 F.4th 1124, 1140 (11th Cir. 2025) (*In re Jennings*, 332 B.R. 465, 469 (Bankr. M.D. Fla. 2005)).

Here, the Bankruptcy Court correctly found that four badges of fraud applied in this case: (1) transfer to insiders, (2) failure to disclose, (3) retention of the transferred property, and (4) transfer occurring shortly before or after a substantial debt is incurred. Furthermore, as discussed above, there was sufficient extrinsic evidence in the record along with the badges of fraud to support the finding of fraudulent intent. *See supra* II.A. The Bankruptcy Court had a robust

11

record of evidence supporting fraudulent intent. Therefore, the Court concludes that the Bankruptcy Court did not commit clear error.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, the Bankruptcy Court's Order is **AFFIRMED**.

**DONE and ORDERED** in Miami, Florida, on June 5, 2026.

_____

PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

CC:   All counsel of record

12